J-A05004-17

2017 PA Super 145

| IN RE: TRUST OF MARILYN | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| MIHORDIN, DECEASED | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: VICKI MIHORDIN | : | No. 1084 WDA 2016 |

Appeal from the Order June 24, 2016
In the Court of Common Pleas of Mercer County
Orphans' Court at No(s): No. 2014-660

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

OPINION BY GANTMAN, P.J.: **FILED MAY 16, 2017**

Appellant, Vicki Mihordin, appeals from the order entered in the Mercer County Court of Common Pleas, which granted the petition filed on behalf of Appellees Lynda J. Pozzuto and her former husband, Michael L. Pozzuto ("Pozzutos") for reformation of a deed. We reverse.

The relevant facts and procedural history of this appeal are as follows. The Pozzutos sought to transfer property located in Rayburn Township, Armstrong County to Lynda Pozzuto's parents, Richard and Marilyn Mihordin ("Mihordins"). In 1995, the Pozzutos executed a Real Estate Sales Agreement ("1995 Agreement") between the Pozzutos as sellers and the Mihordins as buyers of a parcel of land. Michael Pozzuto contacted his counsel to prepare the 1995 Agreement. Pursuant to the 1995 Agreement, the Mihordins would pay the Pozzutos $5,000.00 per year for a period of

three years and an additional $5,000.00 at closing for a total of $20,000.00.

The 1995 Agreement in full provides:

AGREEMENT

THIS AGREEMENT, made this 28th day of March, 1995, by and between Mike Pozzuto and Lynda Pozzuto, his wife (hereinafter referred to as Sellers).

AND

Richard L. Mihordin and Marilyn R. Mihordin, his wife (hereinafter referred to as Buyers);

WHEREAS, the Sellers are in the process of purchasing certain property in Kittanning, Pennsylvania; and

WHEREAS, the Buyers wish to purchase some of the aforesaid property from the Sellers;

NOW THEREFORE, THE PARTIES INTENDING TO BE LEGALLY BOUND, AGREE AS FOLLOWS:

1. Sellers will sell and Buyers will purchase a parcel of land of Buyers choice fronting on 100 feet of river for the sum of $20,000.00 payable at $5,000.00 on day of closing and $5,000.00 a year, each and every year for the succeeding three (3) years.

2. If Buyers decide to sell the aforesaid parcel, they give the Sellers the option to purchase the property for $20,000.00. Said option to be exercised within 90 days after written notice received by Sellers from Buyers.

3. If Sellers would default on the purchase of the said property, they must refund the Buyers all hand monies paid by Buyers to Sellers.

4. Upon Buyers payment of the full purchase price to Sellers, they will receive a deed subject to any encumbrances then existing on the property.

5. Upon the death of Buyers, the land is to revert back to Sellers.

6. If Sellers sell the complete parcel of land, they will deed over the property of Buyers to Buyers.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written.

(*See* 1995 Sales Agreement, attached as Exhibit A to the Pozzutos' Rule to Show Cause; Appellant's Brief, Appendix B at 17.)  The Pozzutos and the Mihordins signed the 1995 Agreement.

In 1998, the Pozzutos executed a deed transferring the riverfront parcel of property to the Mihordins in fee simple.  (*See* Deed of September 10, 1998, attached as Exhibit B to the Pozzutos' Rule to Show Cause; Appellant's Brief, Appendix C at 18.)  The scrivener of the 1995 Agreement was also the scrivener of the 1998 deed, Attorney William Panella.  He did not refer to the 1995 Agreement in preparing the deed or include a reversionary interest in favor of the Pozzutos in the 1998 deed.

Richard Mihordin died in May 2011.  After his death, Marilyn Mihordin created the irrevocable Trust of Marilyn Mihordin on August 23, 2011, and transferred the subject parcel to the trust by virtue of a new deed of the same date.  The trust provided, *inter alia*, that upon Marilyn Mihordin's death, any remaining income and principal or corpus of the trust would go to her two daughters equally.  The named co-trustees and beneficiaries of the trust are her two daughters, Lynda Pozzuto and Appellant, who both signed the trust and agreed to accept the terms and conditions set forth in the

trust. Neither the trust nor the 2011 deed (both prepared by different counsel) referred to any reversionary interest in favor of the Pozzutos. (*See* The Marilyn R. Mihordin Irrevocable Trust Agreement, attached as Exhibit 1 to Appellant's Answer to the Pozzutos' Rule to Show Cause; Appellant's Brief, Appendices D and E, at 19, 20.) Marilyn Mihordin died on October 22, 2014.

On December 21, 2015, the Pozzutos filed a Rule to Show Cause Why A Deed Should Not Be Reformed, seeking to reform the 1998 deed to reflect their ownership of the property in question *via* a reversionary interest, asserting a scrivener's error or mistake as well as the intent of the parties as represented in the 1995 Agreement. Appellant filed an answer on January 12, 2016, and a counterclaim for enforcement of the 2011 deed in trust and an order directing the real estate to be distributed equally between the daughters pursuant to the trust. The Pozzutos filed their answer to the counterclaim on February 1, 2016, with new matter. Appellant replied to the new matter on February 12, 2016.

The court held a hearing on February 23, 2016. By order of June 24, 2016, the court granted the Pozzutos' petition and directed the 1998 deed to be reformed to reflect the asserted reversionary interest in favor of the Pozzutos, consistent with Article five of the 1995 Agreement. Appellant timely filed a notice of appeal on July 20, 2016. On July 25, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on August 5, 2016.

- 4 -

Appellant raises this issue on appeal:

> DID THE [TRIAL] COURT COMMIT ERROR IN ORDERING
> THAT THE DEED IN QUESTION SHOULD BE REFORMED
> DUE TO SCRIVENER'S ERROR?

(Appellant's Brief at 4).

Appellant argues this case presents the classic example of the merger doctrine, under which the 1995 Agreement merged with the 1998 deed, which superseded any provisions of the 1995 Agreement not included in the 1998 deed. Appellant maintains that none of the instruments executed after the 1995 Agreement, including the 1998 deed and the 2011 trust and 2011 deed, refer to a life estate or reversionary interest. Appellant reasons any reversionary interest allegedly in the 1995 Agreement was lost, once the 1998 deed and all later instruments did not include it.

Additionally, Appellant argues the Pozzutos failed to prove a "scrivener's error" by clear and convincing evidence. Specifically, Appellant asserts Attorney Panella's testimony, which the trial court cited in its decision to allow reformation of the 1998 deed, was insufficient to meet the high standard of proof for reformation of the deed. Appellant directs our attention to Attorney Panella's testimony that he made no mistake when he prepared the 1998 deed. Appellant also claims Attorney Panella could not have known the Mihordins' intentions, because he had no contact with them and had not even met them. Appellant insists Attorney Panella's failure to refer to the 1995 Agreement when preparing the 1998 deed was not a mere

"scrivener's error" under Pennsylvania law because he was the same attorney who prepared both documents. Appellant observes the Pozzutos presented no testimony from Attorney Carolyn E. Hartle, who drafted the 2011 deed and trust for Marilyn Mihordin, concerning Marilyn Mihordin's intentions. Regardless, Appellant maintains the Dead Man's Act would bar any testimony adverse to the intentions of Marilyn Mihordin, as expressed in her testamentary documents, because she is deceased. Appellant submits the Pozzutos failed to prove by clear and convincing evidence that the disputed reversionary interest was omitted from the 1998 deed solely by virtue of a "scrivener's error" or mistake. Appellant concludes the doctrine of merger governs this matter, and the court's order to reform the 1998 deed must be reversed. For the following reasons, we conclude relief is due.

Our review of the court's decision to allow reformation of the 1998 deed implicates the following principles:

> [T]he Orphans' [c]ourt is a court of equity, [which means] that in the exercise of its limited jurisdiction conferred entirely by statute, it applies the rules and principles of equity. In equity matters, [w]e must accept the trial court's finding of fact, and cannot reverse the trial court's determination absent a clear abuse of discretion or error of law. The trial court's conclusions of law, however, are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case. **If a decision of the Orphans' court lacks evidentiary support, this Court has the power to draw [our] own inferences and make [our] own deductions from facts and conclusions of law**.

*In re Adoption of R.A.B.*, 153 A.3d 332, 334-35 (Pa.Super. 2016)

(emphasis added). In other words, "[W]here a trial judge passes upon the question of whether the evidence introduced to reform a written instrument meets the standard of being clear, precise and convincing, [that] ruling is open to review [on appeal]." *In re LaRocca's Trust Estate*, 411 Pa. 633, 641, 192 A.2d 409, 413 (1963).

"The general rule, in the absence of fraud or mistake, and of an intent to the contrary, is that an antecedent contract for the purchase of land is merged in the deed…upon the delivery and acceptance of the deed, there exists a '*prima facie* presumption' of merger." *Dobkin v. Landsberg*, 273 Pa. 174, 182, 116 A. 814, 817 (1922) (internal citation and quotation marks omitted). The law presumes that delivery and acceptance of a deed consummates the prior agreement and precludes the parties "from looking behind the conveyance to subjects of strife suggested by their previous…contracts"; this preclusion applies to all parties in interest, even third parties. *Id.* at 185, 116 A. at 818. "When a deed has been executed in pursuance of a prior agreement, it is *prima facie* evidence the latter has so merged that no action could be maintained on any of its covenants…." *Id.* at 186, 116 A. at 818.

"Merger is said to be the rule, except when the intention of the parties is otherwise, or where the stipulations in the contract sought to be enforced are collateral to the functions performed by the deed." *Carsek Corp. v. Stephen Schifter, Inc.*, 431 Pa. 550, 558-59, 246 A.2d 365, 370 (1968).

"A covenant has been said to be collateral, and therefore one which survives delivery of the deed, if it bears no relation to title, possession, quantity or emblements of the transferred property." *Id.* at 559, 246 A.2d at 370 (providing example such as certain clauses in contracts dealing with consideration). The intention of the parties is evidenced by the attending circumstances of each transaction. *Dobkin*, *supra*. "Intention of the parties...may be shown by their declarations, acts, or conduct at the time of execution of the agreement in question or from the terms of the writing itself." *Dick v. McWilliams*, 291 Pa. 165, 169, 139 A. 745, 746 (1927).

"While the general rule undoubtedly is that, if the agreement is one for sale of lands, it will be presumed, in absence of an intent to the contrary, the contract of purchase is merged in the deed; yet such rule does not apply where the plain intention of the parties is that a covenant in the contract should not be merged in the deed." *Id.* (illustrating how parties' unequivocal acts made clear that merger was not intended, where "agreement to complete the building was of a different nature, and collateral to the agreement to sell. If the intention of the parties in the present case, as indicated by their acts and declarations at the time of executing the agreement, is to govern, then there can be no doubt they contemplated keeping the written agreement in force. The matter was discussed among them, and the very purpose of changing the date of the writing to one day later than the date of the deed and bond and mortgage was to void

possibility of construing the agreement as having been merged"). Therefore, "cases may be supposed where the deed would be deemed only a part execution of the contract, if the provisions of the two instruments clearly manifested such to be the intention of the parties. But the *prima facie* presumption of the law arising from the [delivery and] acceptance of a deed is that it is the execution of the whole contract. … [Y]et the general rule is that a purchase is consummated by the conveyance; after which the parties have no recourse to each other except for imposition or fraud, or upon the covenants in the deed." **Dobkin, supra** at 184, 116 A. at 817. Thus, "to rebut the legal presumption [of merger], the intention to the contrary must be clear and manifest." **Id.** at 185, 116 A. at 818.

"[M]istake of a scrivener in preparing a deed, will, or other writing may be established by parol evidence and the instrument reformed accordingly." **In re Duncan's Estate**, 426 Pa. 283, 289, 232 A.2d 717, 720 (1967). "[W]hether the mistake be unilateral or bilateral, the quality of proof required to establish the existence of the mistake is the same; that proof of the mistake must be established by evidence that is clear, precise, convincing, and of the most satisfactory character." **Id.** (quoting **In re LaRocca's Trust Estate, supra** at 640, 192 A.2d at 412). "[T]he evidence must be established by two witnesses [or] by one witness and corroborating circumstances." **Easton v. Washington County Ins. Co.**, 391 Pa. 28, 38, 137 A.2d 332, 337 (1957). "The witnesses must be found to be credible,

that the facts to which they testify are distinctly remembered…and that their testimony is so clear, direct, weighty, and convincing as to enable the [factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re LaRocca's Trust Estate, supra* at 640, 192 A.2d at 413. Unsubstantiated testimony is insufficient to sustain reformation of a deed or other written instrument, if the testimony is evasive and contradictory. *Id.* at 643, 192 A.2d at 414. The transferors' subjective belief is irrelevant when compared to their "objective manifestations of assent to the transfer of the deed." *DiMaio v. Musso*, 762 A.2d 363, 366 (Pa.Super. 2000). If parties who can read do not "read a deed put before [them] for execution, [they are] guilty of supine negligence, which is not the subject of protection either in equity or at law." *In re LaRocca's Trust Estate, supra* at 642, 192 A.2d at 414.

The Surviving Party as Witness Act (Dead Man's Act) is found at 42 Pa.C.S.A. § 5930 and provides in pertinent part:

> [I]n any civil action or proceeding, where any party to a thing or contract in action is dead…and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased…party, shall be a competent witness to any matter occurring before the death of said party….

42 Pa.C.S.A. § 5930. The purpose of the rule is to prevent "the injustice that would result from permitting a surviving party to a transaction to testify

- 10 -

favorably to himself and adversely to the interest of the decedent when the representative of the decedent would be hampered in attempting to refute the testimony by reason of the death of the decedent." *In re Estate of Petro*, 694 A.2d 627, 632 (Pa.Super. 1997); 42 Pa.C.S.A. § 5930. "[B]ecause the decedent's representative is unable to present evidence regarding the transaction, the other party to the transaction should be similarly restricted." *Visscher v. O'Brien*, 418 A.2d 454, 458 (Pa.Super. 1980). Thus, the rule precludes surviving parties, who have an interest that is adverse to the decedent's estate, from testifying as to any transaction or event which occurred before the decedent's death. *In re Estate of Petro, supra*. What disqualifies the witness is the adverse interest, not just the adverse testimony. *In re Hendrickson's Estate*, 388 Pa. 39, 45, 130 A.2d 143, 146 (1957). "This disqualification extends to two classes of witnesses (surviving parties to a transaction and any other person) whose interest is adverse to [the] deceased." *Id.* Only a fixed vested interest disqualifies the proposed testimony; "The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote, or contingent." *In re Groome's Estate*, 337 Pa. 250, 255, 11 A.2d 271, 273 (1940).

In the instant case, the trial court determined the deed should be

reformed and reasoned as follows:

> The standard for achieving this remedy is to present the [c]ourt with clear and convincing evidence of the scrivener's error and the mutual mistake. Therefore, in order for [Appellees] to reform the deed to acquire the property via a remainder interest, they must present this [c]ourt with clear and convincing evidence that the parties to the deed intended for the Mihordins to have a life estate and [Appellees] to have a remainder interest, and this would have been reflected in the deed but for the scrivener's error. [Appellees] have satisfied this burden through the testimony of Attorney Panella.
>
> It is the opinion of this [c]ourt that Attorney Panella's actions of writing the deed without referring to the Sales Agreement resulted in scrivener's error. Furthermore, he presented to this [c]ourt clear and convincing evidence that the parties to the deed were operating under a mutual mistake, that being the absence of the life estate in the deed. Had they referred to the Sales Agreement, they would have included the life estate with reversionary clause in the deed.
>
> \*     \*     \*
>
> Here, [Appellees] are asserting that the scrivener of the deed made a mistake when he left out the life estate and remainder interest. Therefore, [Appellees] must show that the Real Estate Sales agreement did not merge with the deed if they can provide the [c]ourt with clear and manifest evidence. As stated above, [Appellees] have demonstrated clear and manifest evidence of the scrivener error through the testimony of Attorney Panella. Moreover, the Sales Agreement serves as [parol] evidence reflecting the intent of the parties to have a life estate with reversionary interest in the deed.
>
> \*     \*     \*
>
> At issue in this case is whether Attorney Panella's testimony about his dealings with the Mihordins and the drafting of the deed are barred by the Dead Man's Act. However, it is unlikely that Attorney Panella's testimony

would trigger the protections of the Dead Man's Act. The testimony alleged to have occurred was that Attorney Panella did not speak to the Mihordins, nor did he reference the Real Estate Sales Agreement when drafting the deed, and had he reviewed the agreement, he would have seen that the agreement created a life estate to the Mihordins and a remainder interest to [Appellees]. None of these statements trigger the protections of the Dead Man's Act because Attorney Panella has no "interest nor would he share in the outcome of the suit." Therefore, Attorney Panella's testimony concerning his scrivener's error would not be barred by the Dead Man's Act.

(Trial Court Opinion, filed June 24, 2016, at 5-8). The underlying premise of the court's decision was that the 1995 Agreement created a life estate in the subject parcel in favor of the Pozzutos. We respectfully disagree with the court's analysis. **See In re LaRocca's Trust Estate, supra** (allowing for appellate review of trial court's ruling on question "of whether the evidence introduced to reform a written instrument meets the standard of being clear, precise and convincing").

The settled purpose of the 1995 Agreement was to memorialize the Pozzutos' intent to sell a water-front piece of their larger property to the Mihordins for a sum certain of $20,000.00, with a down payment of $5,000.00 at closing and the balance paid at the rate of $5,000.00 per year over the next three years (or by 1998). Articles one through three of the 1995 Agreement expressly set forth the terms of the sale and purchase of the parcel. Article four declares that the Mihordins will receive a deed to the parcel upon payment of the full purchase price, thus concluding the sale/purchase articles in the 1995 Agreement. By virtue of Article four, the

Pozzutos agreed to deed the parcel to the Mihordins as soon as the Mihordins paid the full purchase price for the parcel. Article four makes **no** mention of a life estate or reversionary interest relative to the deed. How, then, can a life estate be created under Article five or the Pozzutos retain the ability to sell the "complete" property and "deed over the property of Buyers to Buyers" under Article six? To make sense of the 1995 Agreement, Articles five and six should be viewed as intended to cover various contingencies while the 1995 Agreement remained in force.[1] Otherwise, Articles five and six on their face conflict with the objective of the rest of the 1995 Agreement and render it ambiguous. Thus, the 1995 Agreement does not support reformation of the 1998 deed as requested.

Further, Attorney Panella testified he had not ever met the Mihordins and did not know them. (N.T. Rule to Show Cause, 2/23/16, at 22, 27). Attorney Panella said he did the legal work on the 1995 Agreement and the 1998 deed for the Pozzutos. (*Id.*) So query how Attorney Panella could have any personal knowledge of the Mihordins' intent regarding the 1998

---

[1] The trial court agreed with Appellees that Article five of the 1995 Agreement created a life estate in their favor which continued after the sale was consummated, so the life estate should have been reflected in the 1998 deed. Article five, however, is better understood as creating a reversionary interest in the land in favor of Appellees until the sale was complete upon final payment of the annual sums, at which time the Mihordins would own the parcel in fee simple. *See* Article four. Appellees failed to prove by clear and convincing evidence that their reading of the 1995 Agreement should prevail. *See Dick, supra* (illustrating quality of proof needed to overcome presumption of merger).

deed? The record also lacks any contrary manifest signs of the Mihordins' intent with respect to the 1998 deed, except for what the 1998 deed expressly states, so the merger doctrine prevails in these circumstances. Yet, the trial court cited Attorney Panella's testimony as clear evidence of all of the parties' intent to include a life estate with reversionary interest in the 1998 deed. To the extent Attorney Panella's testimony can be construed to portray the Mihordins' intent, his testimony is both incompetent and ineffective under the rules of evidence because he did not ever meet or communicate with the Mihordins.

Further, Attorney Panella's testimony is internally inconsistent and evasive concerning his scrivener's error and mistake. On the one hand, he testified that if he had reviewed the 1995 Agreement, he would have included a life estate in the 1998 deed. (***Id.*** at 28). On the other hand, he insisted he had made no mistake in preparing the 1998 deed, which did not include the Pozzutos' purported reversionary interest; he just did not have the 1995 Agreement in front of him when he prepared the 1998 deed. (***Id.***) Accepting all of Attorney Panella's testimony as true, his inconsistencies suggest no clear answer to whether a scrivener's error or mistake actually occurred. Attorney Panella dealt only with the Pozzutos and relied solely on information from the Pozzutos in completing the 1995 Agreement and the 1998 deed at issue. Because Attorney Panella's conflicting statements regarding a potential error in the 1998 deed are defensive and internally

unreliable, his testimony does not amount to clear and convincing evidence of a mere "scrivener's error" or mistake. Thus, we are unable to agree with the court's conclusion that Attorney Panella's testimony alone was enough to satisfy the Pozzutos' burden to prove a scrivener's error or mistake by legally sufficient evidence. *See In re LaRocca's Trust Estate, supra*.

We emphasize that the Pozzutos had the burden to prove error or mistake with respect to the 1998 deed. To support their position, they presented: (a) the 1995 Agreement, which is ambiguous for their purposes; (b) the testimony of Attorney Panella, which was internally inconsistent and evasive on the issue of a scrivener's error and mistake; and (c) the testimony of Lynda Pozzuto, which addressed only **her** understanding of the transaction. The Pozzutos did not present testimony from Michael Pozzuto or from the attorney who created the irrevocable testamentary Trust of Marilyn Mihordin in 2011, which transferred the subject parcel to the trust by virtue of a new deed of the same date. Likewise, the Pozzutos offered no evidence of the value of the parcel compared to how much they charged the Mihordins or the significance of the parcel to the overall property or competent evidence of the Mihordins' intent regarding the parcel. In fact, the only record evidence of the Mihordins' intent is Marilyn Mihordin's transfer of the subject parcel, based on the 1998 deed, to her irrevocable testamentary trust in 2011, which shows her understanding of her ownership of the parcel in fee simple, contrary to the Pozzutos' position.

Moreover, the record makes clear that Lynda Pozzuto was a party to the 1995 Agreement, the 1998 deed, **and** Marilyn Mihordin's 2011 testamentary trust and deed, so Lynda Pozzuto had ample time and opportunity to discover any potential discrepancy concerning the 1995 Agreement, the 1998 deed, and the 2011 deed and trust, but she did nothing until after Marilyn Mihordin died. The 1995 Agreement, the 1998 deed and the 2011 deed are not complicated documents. The Pozzutos were simply negligent in their failure to examine the 1998 deed put before them for execution, as was Lynda Pozzuto's failure to examine the 2011 deed.[2] Consequently, the Pozzutos deserve no protection in equity or at law at this late date on the grounds asserted. ***See id.***

Additionally, any life estate with reversionary interest allegedly created by the 1995 Agreement cannot be deemed "collateral" to the functions of the

_____

[2] Given the Pozzutos' complete lack of evidence on the Mihordins' intent and the dearth of corroborating circumstances, ***In re LaRocca's Trust Estate, supra*** controls the present case; and the passage of 17 years until discovery of the alleged mistake militates against reformation of the deed. The case of ***Schwartz v. Gingerich***, 14 A.2d 623, 625 (Pa. Super. 1940) is unquestionably distinguishable, where the ***Schwartz*** Court held the clear and precise testimony of the witness concerning the intent of **all** parties, together with "all of the corroborating circumstances," such as the specific details of the lots at issue, the property assessments, the tax records, and the lack of repairs or improvements, "was of such weight and directness as to carry conviction" that the deed should be reformed under the doctrine of mutual mistake. The number of corroborating circumstances essentially had the force and effect of a second witness, according to the Court, so the plaintiffs' failure to discover the mistake until eight years after the execution of the deed was not fatal to their claim for reformation in that case.

1998 deed, as a reversionary interest bears a direct relation to "title, possession, quantity or emblements of the transferred property." ***See Carsek Corp., supra*** at 559. Therefore, the reversionary interest supposedly created in Article 5 of the 1995 Agreement did not survive the 1998 deed and merged with the 1998 deed. The Pozzutos' evidence does not overcome the merger rule.

Finally, we briefly address the issue of whether Attorney Panella's testimony should have been excluded under 42 Pa.C.S.A. § 5930. Attorney Panella undoubtedly has a personal interest in avoiding a professional negligence action, and the outcome of the present proceeding might serve as evidence against him in a legal malpractice suit. ***See In re Groome's Estate, supra***. If, on the other hand, his personal concern with the outcome of this case could be construed as contingent and not a present, certain and vested interest, Attorney Panella's testimony might have been permissible under the Section 5930. ***Compare Commonwealth v. Veon***, ___ Pa. ___, 150 A.3d 435 (2016) (holding "private pecuniary benefit" under "Public Official and Employee Ethics Act," a/k/a "conflict of interest" statute governing restricted activities of public officials, must be private financial interest and quantifiable gain; it does not extend to "intangible political gain") ***with In re Groome's Estate, supra*** (conveying somewhat broader test for "interest" of surviving witness, which includes gain or loss for witness as direct legal operation and effect of judgment, or likelihood

that record will be legal evidence for or against witness in some other action). Under the circumstances of the present case, however, we do not have to decide the Section 5930 question, given the other limitations of Attorney Panella's testimony already discussed.

Based upon the foregoing, we hold the court erred in granting reformation of the 1998 deed, where the record evidence in this case was legally insufficient to prove a scrivener's error or mistake necessary to overcome the merger doctrine and support reformation; and Attorney Panella's testimony was incompetent evidence as to the Mihordins' intent with respect to any relevant transaction. Thus, we reverse the order granting reformation of the 1998 deed.

Order reversed.

Judge Moulton joins this opinion.

President Judge Emeritus Bender files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2017

- 19 -