J-A14011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE AND TRUST OF EDWARD E. CLAWSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MARK A. MCCULLOUGH | : : : : : : | |
| | : | No. 1622 WDA 2019 |

Appeal from the Order Entered September 19, 2019
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  Case No. 65-13-1442

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 21, 2020**

Appellant, Mark A. McCullough, appeals from the orphans' court's September 19, 2019 order overruling Appellant's Objections to the First and Final Account/Petition for Adjudication/Statement of Proposed Distribution of Linda Bliel ("Objections" and/or "objections").  Additionally, Appellant's attorney, George C. Miller, Jr., Esquire, has filed a motion to withdraw as counsel.  After careful review, we affirm the orphans' court order and grant the motion to withdraw as counsel.

The following facts and procedural history have been adopted from the facts included in the filings in the orphans' court, the orphans' court opinion filed on September 19, 2019, and our own review of the record:

On September 12, 2001, Edward Clawson ("Clawson") executed his will and established the Clawson Family Trust (the "Trust").  Objections, 9/17/18,

Exhibits A and B. The will and Trust documents were prepared by Bruce Bilohlavek, Esquire. *Id.* at ¶ 18.[1] The will provided that upon Clawson's death, all of his property would pour over into the Trust. *Id.* Exhibit A, ¶ 6. Clawson's will also declared that Clawson "intentionally and with full knowledge omitted to provide for his heirs." *Id.* at ¶ 7. Clawson named his sister, Mary McCullough ("Mary"), as executrix and her son, Appellant, as alternate executor. *Id.* at 9-1.

The Trust named Clawson as the initial trustor and sole trustee, with Mary and Appellant as successor trustees. Objection, 9/17/18, Exhibit B 4-1. Clawson also granted Mary power of attorney over his health care and asset management decisions and named Appellant as alternative agent in both documents. N.T., 6/24/19, at 69.[2]

_____

[1] Attorney Bilohlavek died on January 5, 2012. Objections, 9/17/18, at ¶ 18. Appellant contacted the attorney assigned by the President Judge of Washington County, Pennsylvania, to oversee Mr. Bilohlavek's pending cases and was informed that Mr. Bilohlavek did not leave any files behind. N.T., 6/24/19, at 87. Mr. Bilohlavek's surviving sister also was unaware of the existence of Mr. Bilohlavek's case files. *Id.* at 88.

[2] Although Appellant testified without objection from the Commonwealth that he was named the alternative agent in the health care and asset management powers of attorney, the Commonwealth later objected to the admission of the powers of attorney documents on relevancy grounds. N.T., 6/24/19, at 79. The orphans' court admitted the documents provisionally, subject to later review. *Id.* at 80. The orphans' court ultimately decided that it was unnecessary to rule on the admissibility of these documents. Orphans' Court Opinion, 9/19/19, at unnumbered 5.

Three years later, when Clawson's mental abilities began to decline, Appellant began assisting Clawson with bill paying and medical appointments. N.T., 6/24/19, at 111. Mary died in 2008, making Appellant the acting power of attorney for Clawson. *Id.* at 65, 69.

In 2011, the Westmoreland County Area Agency on Aging ("the Agency") began investigating Appellant's handling of Clawson's finances. N.T., 6/24/19, at 129. Because Appellant was uncooperative with the investigation, the Agency petitioned for guardianship. *Id.* After Clawson was declared incompetent, the Agency was appointed as his guardian. *Id.* at 128. Appellant's subsequent petition to have his guardianship reinstated was denied. *Id.* at 126.

Clawson died testate on June 30, 2013. Objections, 9/17/18, at ¶ 1. After his death, Attorney Bruce Bert Muldovan, counsel for the estate/trust fiduciary, notified the Commonwealth, in its *parens patriae* capacity,[3] of Clawson's death along with copies of the will and Trust reflecting a charitable bequest to the Diocese of Greensburg (the "Diocese"). Commonwealth's Objection to the Account, 9/18/18, at ¶ 17 ("Commonwealth's Objection").[4]

---

[3] The Pennsylvania Office of Attorney General, the Estate and Trust of Clawson, and the Diocese of Greensburg are designated as Participants in this appeal. Only the Commonwealth, which is an indispensable party in every proceeding which affects a charitable trust, *see In re Insurance Trust of Sanders*, 210 A.3d 192, 197 (Pa. Super. 2018), filed an appellate brief.

[4] Appellant retained Attorney Muldovan to represent the estate in July 2013. Response to Rule to Show Cause, 11/2/16, at ¶ 7.

In September 2016, upon learning that Appellant refused to inform the Diocese of Clawson's death and that he intended to make a claim under the Trust in conflict with his duties as trustee and executor, the Commonwealth filed a Rule to Show Cause Why Appellant Should Not be Removed as Executor/Trustee. Rule to Show Cause, 10/5/16, at ¶ 20. On November 15, 2016, Appellant was removed as executor and trustee by consent agreement and Linda Bliel ("Bliel") was appointed substitute interim fiduciary. Consent Agreement, 11/15/16, at unnumbered 1–3.

On August 3, 2018, Bliel filed a First and Final Account and Petition for Adjudication/Statement of Proposed Distribution (the "Petition"), seeking to distribute the proceeds of the Trust to the Diocese. Petition, 8/13/18, at ¶ 11. Appellant filed objections and petitioned the orphans' court to reform the Trust naming him as the sole beneficiary. *Id.* at ¶ 29.[5] The Commonwealth likewise filed objections to the Petition on behalf of the estate concerning payments to Appellant and also filed preliminary objections to Appellant's objections. Commonwealth's Objection, 9/18/18, at ¶¶ 27, 30; Commonwealth's Preliminary Objections, 10/9/18, at ¶ 17.[6]

_____

[5] Appellant also requested to be reinstated as executor and trustee of the Trust. Petition to Reinstate, 12/5/18, at unnumbered 1. The orphans' court denied the petition on January 25, 2019.

[6] In its preliminary objections, the Commonwealth averred that Appellant did not have standing to assert a claim of reformation of the Trust. Commonwealth's Preliminary Objections, 10/9/18, at ¶ 17. The orphans'

On June 24, 2019, the orphans' court held a hearing on Appellant's objections to the Petition. Appellant presented two witnesses: Richard Paremka ("Paremka"), a friend of Clawson's, and himself. Paremka testified generally that he knew that Clawson created a trust and that Clawson mentioned that he intended to leave his estate to Mary and Appellant, and if they predeceased him, to the church. N.T., 6/24/19, at 53. Appellant testified that Clawson told him that he created a trust naming Mary and Appellant as beneficiaries. *Id.* at 102.

On September 19, 2019, the orphans' court overruled Appellant's objections and declined to reform the Trust. This appeal followed. Both Appellant and the orphans' court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for appellate review:

1. Whether the trial court erred in holding that the predicate to pursuing trust reformation is that Appellant had to first establish "clear and convincing evidence that [Clawson's] intent was affected by a mistake of fact or law to justify application of 20 Pa.C.S. § 7740.5[?]"

2. Whether the trial court erred in its application of the additional burden of "exceptional circumstances" to the question of trust reformation, and, even if such a burden were properly applied, whether the trial court erred in holding that these circumstances did not demonstrate exceptional circumstances[?]

3. Whether the trial court misapplied the standard announced by the Uniform Trust Code by placing controlling weight upon the trustor's unknown intent at the precise time that the trust at issue

_____

court overruled the objections on March 18, 2019. Order, 3/18/19, at unnumbered 2.

- 5 -

was drafted, rather than placing controlling weight upon the trustor's actual statements of intent[?]

4. Whether the trial court's holding that ". . . the testimony presented is not sufficient to rise to the level of clear and convincing evidence that a mistake of law or fact occurred" is against the weight of the evidence, including the patent design of the trust, or applicable law[?]

5. Whether the trial court erred in failing or refusing to reform the trust instrument in light of the available evidence of the trustor's "probable intention[?]"

6. Whether the trial court erred in applying the evidentiary burden, "clear and convincing evidence," rather than the lower burden, "preponderance of the evidence," to Appellant's legally distinct claim that the trust beneficiary is uncertain or ambiguous[?]

7. Whether the trial court erred in failing to find a scrivener's error in the trust instrument[?]

8. Whether the trial court erred as a matter of law in refusing to find the presence of either a patent or latent ambiguity in the trust instrument, and whether such a refusal is against the weight of the evidence[?]

9. Whether the trial court erred in failing or refusing to rule upon objections or give sufficient weight to certain evidence offered by Appellant, in the course of the hearing below, to wit: Exhibit 3 (power of attorney for health care) and Exhibit 4 (power of attorney for asset management)[?]

Appellant's Brief, at 5–7 (full capitalization and footnotes omitted).

We condense Appellant's nine allegations of error into three:  1) whether the orphans' court erred in failing to reform the Trust under the Uniform Trust Code, 20 Pa.C.S. § 7740.5 ("UTC") (Appellant's Issues 1–6, 8); 2) whether the orphans' court erred in failing to find that a scrivener's error created an ambiguity in the Trust (Appellant's Issue 7); and, 3) whether the orphans'

court erred in failing to rule on the admissibility of certain evidence presented at the June 24, 2019 hearing (Appellant's Issue 9).

Prior to addressing the merits of these contentions, we outline the applicable standard of review:

> Our standard of review of an orphans' court's decision is deferential. When reviewing an orphans' court decree, this Court must determine whether the record is free from legal error and whether the orphans' court's findings are supported by the record. Because the orphans' court sits as the finder of fact, it determines the credibility of the witnesses and, on review, this Court will not reverse its credibility determinations absent an abuse of discretion. However, this Court is not bound to give the same deference to the orphans' court conclusions of law.

**Estate of Sacchetti v. Sacchetti**, 128 A.3d 273, 281–282 (Pa. Super. 2015) (quotation and internal citations omitted).

Appellant's overarching argument challenges the orphans' court failure to reform the Trust. Appellant contends that the following provisions of Article IV of the Trust misstate Clawson's testamentary intent:

> D. <u>Distribution of Gifts</u>. The Trustee shall distribute gifts of trust property, subject to the provisions of ARTICLE IV.G. herein below, to beneficiaries as follows:
>
> MARY J. MC CULLOUGH 100%
>
> If any beneficiary named in this ARTICLE IV.D. is not then living, the gift to such deceased beneficiary shall lapse and shall become a portion of the remainder of the trust estate.
>
> E. <u>Distribution of Remainder of Trust Estate</u>. Upon the death of the Trustor, the Trustee shall, after paying or reserving for all amounts payable, as provided in ARTICLE IV A. through D., divide the remainder of the trust estate into * shares set forth as follows and shall hold, administer and distribute each share according to the provisions of ARTICLE IV.G. herein below:

> F. <u>Distribution of Deceased Beneficiary's Share</u>. In the event a beneficiary named in Paragraph E of this ARTICLE IV. is not then living, the share of such deceased beneficiary shall be distributed to GREENSBURG DIOCESE, BISHOP ANTHONY BOSCOE.

Objection, 9/17/18, Exhibit B.[7]  Appellant claims that the presence of the asterisk ("*") in paragraph E indicates an intention to name him as a successor beneficiary and he petitioned the orphans' court to correct Article IV Section E of the Trust to include his name as the remainder beneficiary.  He based this request to the orphans' court on two grounds:  1) a scrivener's error occurred making the proper distribution of the Trust and the identity of the proper beneficiary ambiguous; 2) if the orphans' court did not find an ambiguity, the UTC:

> allows a court to "reform a trust instrument, even if unambiguous, to conform to the settlor's probable intention if it is proved by clear and convincing evidence that the settlor's intent as expressed in the trust instrument was affected by a mistake of fact or law, whether in expression or inducement. . . ."

> Orphans' Court Opinion, 9/19/19, at unnumbered 2 (quoting 20 Pa.C.S. § 7740.5).

We review Appellant's arguments with the following precepts in mind. The polestar in every trust is the settlor's intent, *see Estate of Pew*, 655 A.2d 521, 533 (Pa. Super. 1994) (citation omitted), and the "best evidence of a testator's intent is the testamentary document itself and the testator's arrangements with his attorney." *Estate of Agnew v. Ross*, 152 A.3d 247,

---

[7] Appellant does not contend that the provisions of Article IV.G are at issue.

261 (Pa. 2017) (internal quotation marks and citations omitted). The "evidence of intent of devisor should be derived from writing signed by him, otherwise innumerable cases would arise where evidence of mistake would be claimed and proved." *Id.* at 262 (citing *Wallize v. Wallize*, 55 Pa. 242, 248 (1867)). Disregarding the text of a trust agreement invites fraud, which the statutory requirements that a trust be written and signed by the trustor, *see* 20 Pa.C.S. §§ 7732, 7737, seek to prevent. *See also Estate of Agnew*, 152 A.3d at 262 (the execution requirement and the bar on extrinsic evidence prevent speculation regarding a testator's intent when that intent is properly reflected only in an executed testamentary document"). Therefore, a trust instrument that is unambiguous on a matter may not be superseded by extrinsic evidence of the settlor's intent. *Id*.; *see also In re Beisgen's Estate*, 128 A.2d 52, 55 (Pa. 1956) ("The dangers inherent in admitting parol evidence to prove a testator's intention—namely, opening the door to fraud, changing or defeating the testator's intention . . . make clear the reason for the exclusion of such evidence").

The UTC provides for the following limited exception to this general rule:

> The court may reform a trust instrument, even if unambiguous, to conform to the settlor's probable intention if it is proved by clear and convincing evidence that the settlor's intent as expressed in the trust instrument was affected by a mistake of fact or law, whether in expression or inducement.

20 Pa.C.S. § 7740.5. The Uniform Law Comment to § 7740.5 further explains:

> This section applies whether the mistake is one of expression or one of inducement. A mistake of expression occurs when the

terms of the trust misstate the settlor's intention, fail to include a term that was intended to be included, or include a term that was not intended to be included. A mistake in the inducement occurs when the terms of the trust accurately reflect what the settlor intended to be included or excluded but this intention was based on a mistake of fact or law. Mistakes of expression are frequently caused by scriveners' errors while mistakes of inducement often trace to errors of the settlor.

Reformation is different from resolving an ambiguity. Resolving an ambiguity involves the interpretation of language already in the instrument. Reformation, on the other hand, may involve the addition of language not originally in the instrument, or the deletion of language originally included by mistake, if necessary to conform the instrument to the settlor's intent. Because reformation may involve the addition of language to the instrument, or the deletion of language that may appear clear on its face, reliance on extrinsic evidence is essential. To guard against the possibility of unreliable or contrived evidence in such circumstance, the higher standard of clear and convincing proof is required.

20 Pa.C.S. § 7740.5, cmt. (citations omitted). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Adoption of L.J.B.*, 18 A.3d 1098, 1107 (Pa. 2011) (quotation omitted).

As to Appellant's argument that a scrivener's error created an ambiguity in the Trust, the orphans' court determined that the trust instrument did not contain an ambiguity that permitted it to "utilize any evidence beyond the document itself to interpret [Clawson's] intent." Orphans' Court Opinion 9/19/19, at unnumbered 2. In so concluding, the orphans' court cogently analyzed the terms of the Trust, as follows:

In Article IV Section D of the trust instrument, [Clawson] clearly and unambiguously devises 100% of the trust to [Mary]. To support his position, [Appellant] points out an asterisk that was not removed and replaced in Article IV Section E. That section is titled "Distribution of Remainder of Trust Estate." Upon reading Section E, it is clear that the asterisk refers to the number of shares that the remainder of the trust would be divided into after distribution pursuant to Section D. The asterisk does not require the filling in of a name, but a name could be filled in after the colon if the number of shares is put in place of the asterisk. Since one hundred percent of the trust was clearly devised to [Mary], there was no remainder of the trust estate to divide into shares and make Section E applicable.

Orphans' Court Opinion, 9/19/19, unnumbered at 2–3.

The orphans' court also rejected Appellant's argument that the trust should be reformed under the UTC. The court noted that the only evidence of Clawson's intent was Appellant's own representation that Clawson assured him that Appellant "would be taken care of in his estate planning" and Paremka's statement that Appellant was the only family member that Clawson spoke of favorably. Orphans' Court Opinion, 9/19/19, at unnumbered 4. The orphans' court discounted Paremka's testimony because he was unable to show that Clawson's statements to him were made contemporaneously with the creation of the Trust. *Id.* Thus, the orphans' court concluded that Appellant failed to establish by "clear and convincing evidence" that [Clawson's] intent was affected by a mistake of fact or law to justify the application of 20 Pa. C.S. §7740.5. *Id.*

On appeal, Appellant contends generally that the orphans' court erred "in refusing find the presence of either a patent or latent ambiguity in the

Trust. . . ." Appellant's Brief at 34. Specifically, Appellant asserts that in refusing to reform the Trust, the orphans' court improperly focused on whether Clawson was mistaken when he signed the Trust documents, rather than whether the terms of the Trust were consistent with Clawson's intent. Appellant's Brief at 19. The basis of Appellant's largely semantical argument is that "[t]he express terms of the Uniform Law Comment to § 7740.5 are not addressed to whether a trustor is mistaken at the time the trust is executed. Rather, the necessary inquiry is whether at the time of execution "the terms of the trust misstate the settlor's intention . . .[.]" *Id*.

Case law instructs that the time of execution is the point that courts must examine in ascertaining the testator's intentions. *In re Estate of Tscherneff*, 203 A.3d 1020, 1024 (Pa. Super. 2019) ("[I]n ascertaining the testator's intention, a will is to be construed as of the date of its execution").[8] Although Appellant suggests that the time of execution does not govern an inquiry concerning whether the trust accurately reflects the testator's intention, he offers no authority to support this assertion. In fact, Appellant's own words contradict this theory, to wit: "the necessary inquiry is whether **at the time of execution** 'the terms of the trust misstate the settlor's intention.'" Appellant's Brief at 19 (emphasis added).

---

[8] "Principles applicable to trust construction are essentially same as those used in will construction and intent of settlor must prevail." *Estate of Agnew* 152 A.3d at 262 (citing *In re Tracy*, 346 A.2d 750, 752 (Pa. 1975)).

Appellant also asserts that the orphans' court should have considered extrinsic evidence to ascertain whether the terms of the Trust misstated Clawson's intent. However, as explained by the orphan's court, Appellant failed to hurdle the UTC's threshold requirement of clear and convincing evidence demonstrating that Clawson's intent was affected by a mistake. The orphans' court observed:

> [T]his [c]ourt does not find that [Appellant] established by **clear and convincing evidence** that [Clawson's] intent was affected by a mistake of fact or law to justify the application of 20 Pa. C.S. §7740.5. Reforming of a trust pursuant to the UTC is only supposed to be done in an "exceptional circumstance." *In re Navarra*, 185 A.3d 342 (Pa. Super. Ct. 2018). No exceptional circumstances exist in the current matter. Decedent was clearly aware of [Appellant] at the time the trust document was created because he included [Appellant] as a successor trustee in the event that Mary could not serve. [Clawson] also included [Appellant] as a successor executor of his will if Mary could not serve. What [Clawson] did not do is include [Appellant] as a successor to Mary's devise of one hundred percent of the trust in the event that she could not obtain same due to her predeceasing [Clawson]. If that was his intent, he could have easily continued naming [Appellant] as Mary's successor by listing his name in Section E.
>
> * * *
>
> As a result, this Court finds that the testimony presented is not sufficient to rise to the level of **clear and convincing evidence** that a mistake of law or fact occurred that frustrated [Clawson's] true intent.

Orphans' Court Opinion, 9/19/19, at unnumbered 4 (emphases added).

We discern no error in either the orphans' court parsing of the Trust's terms or its assessment of Appellant's evidence of Clawson's supposed contrary intent. The orphans' court correctly determined that the Trust unambiguously devised one hundred percent of its proceeds to Mary and that

- 13 -

the asterisk in Section E referred to the number of shares that the remainder of the Trust would be divided into after distribution pursuant to Section D. Orphans' Court Opinion, 9/19/19, at unnumbered 3. Moreover, Appellant's contention that the orphans' court erred in applying the clear and convincing evidentiary burden to Appellant's claim that the Trust was ambiguous, **see** Appellant's Brief at 30, is unsupported. The orphans' court's initial conclusion that the Trust was unambiguous resulted from a straightforward scrutiny of the language of the Trust, and it did not employ the "clear and convincing" standard of proof in arriving at its decision.

That being said, we conclude that the orphans' court did properly employ the clear and convincing standard in its ultimate finding that Appellant's evidence that the Trust misstated Clawson's intent was insufficient to justify reformation of the Trust. Paremka's evidence was vague as to the specifics of Clawson's intent and lacked the necessary temporal proximity to when the Trust was executed. Additionally, Appellant's self-serving testimony clearly was not "so clear, direct, weighty, and convincing as to enable the [factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." **L.J.B.,** 18 A.3d at 1107.

We also reject Appellant's assertion that the holding of **In re Navarra**, 185 A.3d 342 (Pa. Super. 2018), supports his argument advocating reformation. In **Navarra**, a wife's plenary guardian brought an action to amend the wife's will to disinherit residuary legatees, who were her husband's

children, after the husband amended his will to disinherit his wife's children. The guardian petitioned the orphans' court to substitute its judgment for the wife's, who suffered from dementia, pursuant to 20 Pa.C.S. § 5536(b),[9] and disinherit the husband's children. In reaching its decision to grant the guardian's petition to substitute its judgment, the orphans' court determined the preponderance of the evidence standard, rather than the clear and convincing evidence standard, was the proper standard of proof to establish good cause to modify the husband's will. ***Navarra***, 185 A.3d at 355. In a footnote, however, the orphans' court observed that other inquiries as to testamentary intent require clear and convincing evidence:

> [W]e address another exceptional circumstance in which the legislature has required clear and convincing evidence: when a petitioner moves to reform a trust instrument to conform to the settlor's intent when the trust instrument "was affected by a mistake of fact or law. . . ." 20 Pa.C.S.A. § 7740.5. The clear and convincing standard applies here not only "to guard against the possibility of unreliable or contrived evidence," Uniform Law Comment, 20 Pa.C.S. § 7740.5, but also because Pennsylvania traditionally has required clear and convincing evidence to reform instruments on the basis of mistake. ***See Thrasher v. Rothrock***, 377 Pa. 562, 105 A.2d 600, 604 (1954) (citing ***In re Ridgway's Account***, 206 Pa. 587, 56 A. 25 (1903)).
>
> The circumstances addressed in Section 7740.5 do not exist here. [The guardian] does not contend that Wife's will was the product of mistake at the time of execution. Instead, [the guardian] contends that the will was consistent with Wife's intent at the time of execution, but that (1) Wife and Husband had reciprocal wills, (2) Husband later amended his will to disinherit Wife's children, so (3) as a matter of reciprocity, Wife would have responded to Husband's amendment by amending her own will to disinherit

---

[9] 20 Pa.C.S. §5536(b) governs distributions of income and principal during periods of incapacity.

> Husband's legatees. Thus, Section 7740.5 would not persuade us that the clear and convincing test applies to the present case.

***Navarra***, 185 A.3d at 356 n.7. Appellant contends that the above-cited language demonstrates that the ***Navarra*** Court endorsed his position that there is a distinction between circumstances when a settlor is mistaken at the time a trust is executed and those wherein the terms of the trust misstate the settlor's intention. Appellant's Brief at 20. That is not an accurate reading of the decision. Rather, this Court simply concluded that although the wife's will accurately reflected her intent at the time of execution, the orphans' court had good cause to substitute its judgment and modify the will due to her husband's subsequent revision of his will to exclude the wife's children. ***Navarra,*** 185 A.3d at 57. Other than observing that this was not a situation where the will was the product of mistake at the time of execution, the ***Navarra*** court did not discuss the distinction Appellant advocates as crucial to this matter.

Appellant next asserts that the orphans' court required proof of "exceptional circumstances" before reforming the Trust. Appellant's Brief at 21. This argument is baseless. It its opinion, the orphans' court observed that "[r]eforming of a trust pursuant to the UTC is only supposed to be done in an "exceptional circumstance." Orphans' Court Opinion, 9/19/19, at unnumbered 4 (citing ***Navarra***, 185 A.3d at 342). However, it is clear from the previously-cited excerpt from the orphans' court opinion on page 13, *supra*, and the language highlighted therein that it utilized the clear and convincing standard in evaluating the evidence proffered by Appellant regarding Clawson's intent.

- 16 -

Appellant also alleges that the orphans' court improperly focused on Clawson's intent at the time he executed the estate documents. Appellant's Brief at 23. However, as earlier explained, time of execution is the point in when courts must examine in ascertaining the testator's intentions. *Tscherneff*, 203 A.3d at 1024 (in ascertaining the testator's intention, a will is to be construed as of the date of its execution).

Appellant additionally maintains that the orphans' court's finding that the testimony of Appellant and Paremka was insufficient to rise to the level of "clear and convincing" is against the weight of the evidence. Appellant's Brief at 26. In a companion argument, Appellant urges that the orphans' court erred in refusing to reform the Trust in light of the evidence of Clawson's probable intention. *Id.* at 29. Specifically, Appellant urges that he presented uncontradicted testimony that the Trust contained a mistake in expression because it failed to name him as a beneficiary of the Trust.

We have already concluded that the orphans' court correctly decided that Appellant's and Paremka's testimony did not demonstrate clear and convincing evidence of Clawson's probable intent. We likewise reject Appellant's claim that the orphans' court's decision not to reform the Trust was against the weight of the evidence. *See In re Duncan's Estate*, 232 A.2d 717, 720 (Pa. 1967) (where the auditing judge sees and hears the witnesses, determines their credibility and the weight to be given their testimony, his findings, like those of a jury, will not be disturbed except for

clear error). We have no reason to disturb the orphans' court assessment of the evidence. Appellant's self-interested testimony was limited to one conversation with his uncle wherein Appellant claimed that Clawson assured him that he would take care of Mary and Appellant and that he created a trust to that effect. N.T., 6/24/ 19, at 86, 102. Paremka merely recalled that Clawson had a trust and that, at some unspecified time, Clawson mentioned that he would remember Appellant in his estate plan. *Id.* at 53. The fact that the evidence was not contradicted does not mean that it was clear and convincing. The court was within its discretion when it determined that this information was not persuasive evidence of Clawson's intent.

Appellant next asserts that the orphans' court erred when it failed to find a scrivener's error. Appellant's Brief at 32. Appellant contends that the orphans' court incorrectly confined its review of the Trust to the four corners of the document and failed to consider his and Paremka's testimony of Clawson's testamentary intent. Appellant directs our attention to the presence of the asterisk and colon in Article IV E of the Trust and posits that in light of his and Paremka's testimony the "oddity of Article IVE must at the very least represent a scrivener's error." *Id.*

"[M]istake of a scrivener in preparing a deed, will, or other writing may be established by parol evidence and the instrument reformed accordingly." *In re Mihordin*, 162 A.3d 1166, 1172 (Pa. Super. 2017) (quotation omitted). Whether the mistake be unilateral or bilateral, "the proof of the mistake must

be established by evidence that is clear, precise, convincing, and of the most satisfactory character." ***Id.*** As with Appellant's other claims extolling the persuasiveness of his and Paremka's testimony, it is obvious that this evidence of Clawson's intent does not rise to the standard of clear and convincing proof required to establish the existence of a scrivener's mistake.

Appellant's last issue concerns the orphans' court failure to rule on certain evidentiary issues. By way of background, during the June 24, 2019 hearing, the Commonwealth raised objections based upon*, inter alia*, the Dead Man's Act, 42 Pa.C.S. § 5930, regarding Appellant's testimony related to Clawson's testamentary intent and the introduction of Appellant's exhibits reflecting his appointment as power of attorney. The orphans' court reserved ruling on the objections, and allowed the case to proceed. N.T., 6/24/19, at 80. After the hearing, the parties submitted briefs on the evidentiary issues. In its opinion, the orphans' court then observed the following: "Since the evidence presented, even if all of it is admitted and taken into consideration, does not support the sustaining of the objections raised, there is no need for this [c]ourt to rule on the objections to admission of the evidence made by the Commonwealth during the hearing." Orphans' Court Opinion, 9/19/19, at unnumbered 5. Therefore, Appellant's issue and also the Commonwealth's argument concerning the Dead Man's Act which Appellant addresses in his reply brief, are not before us.

Order affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/21/2020</u>