J-A22036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CAVALLO MINERAL PARTNERS, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EQT PRODUCTION COMPANY, KENNETH W. MCCHESNEY AND KATHY MCCARL, AS CO-TRUSTEES OF THE MCCHESNEY FAMILY REVOCABLE LIVING TRUST DATED FEBRUARY 12, 2013, VANTAGE ENERGY APPALACHIA, LLC, VANTAGE ENERGY APPALACHIA II, LLC, T&F EXPLORATION, LP AND THREE RIVERS ROYALTY, LLC | : | No. 1515 WDA 2023 |

Appeal from the Order Entered November 22, 2023
In the Court of Common Pleas of Greene County Civil Division at No(s):
CP-30-AD-0000060-2018

| | | |
|---|---|---|
| CAVALLO MINERAL PARTNERS, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EQT PRODUCTION COMPANY, KENNETH W. MCCHESNEY AND KATHY MCCARL, AS CO-TRUSTEES OF THE MCCHESNEY FAMILY REVOCABLE LIVING TRUST DATED FEBRUARY 12, 2013, VANTAGE ENERGY APPALACHIA, LLC, VANTAGE ENERGY APPALACHIA II, LLC, T&F EXPLORATION, LP AND THREE RIVERS ROYALTY, LLC | : | No. 1516 WDA 2023 |

Appeal from the Judgment Entered December 18, 2023
In the Court of Common Pleas of Greene County Civil Division at No(s):
CP-30-AD-0000060-2018

| | | |
|---|---|---|
| CAVALLO MINERAL PARTNERS, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EQT PRODUCTION COMPANY, GARY W. MCCHESNEY, AS TRUSTEE OF THE MCCHESNEY FAMILY REVOCABLE LIVING TRUST DATED FEBRUARY 12, 2013, VANTAGE ENERGY APPALACHIA, LLC, VANTAGE ENERGY APPALACHIA II, LLC, T&F EXPLORATION, LP, AND THREE RIVERS ROYALTY, LLC | : : : : : : : : : : | No. 1517 WDA 2023 |

Appeal from the Order Entered June 21, 2022
In the Court of Common Pleas of Greene County Civil Division at No(s):
AD-60-2018

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: March 13, 2025**

Appellant, Cavallo Mineral Partners, appeals at docket No. 1516 WDA 2023 from the judgment entered on December 18, 2023,[1] in the Green County Court of Common Pleas, in favor of Appellees, EQT Production Company ("EQT"), the McChesney Family Revocable Living Trust Dated February 12, 2013 ("the McChesney Trust"), Vantage Energy Appalachia, LLC ("VEA") and

---

[1] Although Appellant purported to appeal from a judgment entered on December 19, 2023, the docket reflects that judgment was entered on December 18, 2023. We have changed the caption accordingly.

- 2 -

Vantage Energy Appalachia II, LLC ("VEA II"), T&F Exploration, LP ("T&F"), and Three Rivers Royalty, LLC ("Three Rivers"), and against Appellant. We affirm.[2]

The relevant facts and procedural history of this case are as follows. This case concerns the ownership of oil and gas rights on a nearly 200-acre property in Washington Township, Pennsylvania ("the Property"). On April 16, 1990, Des Moine Field ("Mr. Field") executed a deed ("1990 Deed") in favor of Gary and Judith Anne McChesney ("the McChesneys"). The 1990 Deed excepted and reserved the coal and mineral rights in favor of the Grantor, Mr. Field, and included the following exception and reservation of the oil and gas rights:

> ALSO EXCEPTING AND RESERVING, for the benefit of Grantees, his heirs and assigns, all oil and gas not previously excepted, reserved or conveyed, together with the right to mine and operate for the same.

(Amended Complaint, filed 4/18/18, at Exhibit 2, 1990 Deed, at 4). Mr. Field died testate on February 22, 1993. His will was admitted to probate, and he had six beneficiaries ("the Field Heirs").

On February 28, 2003, the McChesneys leased the oil and gas interest acquired under the 1990 Deed to T&F and assigned a royalty interest to Three Rivers. T&F drilled and operated a surface oil and gas well on the Property.

---

[2] Appellant also purports to appeal at docket Nos. 1515 WDA 2023 and 1517 WDA 2023 from earlier orders entered in this case. As discussed in greater detail later in this memorandum, we quash those appeals.

T&F later partially assigned interest to other parties including Rice Drilling B ("Rice").[3] In 2013, the McChesneys executed two oil and gas leases in favor of EQT. EQT later placed the Property into production units, drilled horizontal wells beneath the Property, and has produced a substantial volume of oil and gas.

On February 5, 2018, Appellant filed a complaint against all Appellees. Appellant filed an amended complaint against all Appellees on April 18, 2018, averring that Appellant owned the oil and gas interest in the Property. Appellant asserted claims for quiet title and declaratory judgment against EQT, Rice, the McChesney Trust, T&F, and Three Rivers, and claims of trespass, conversion, and ejectment against EQT and Rice. The claims of trespass and conversion sought punitive as well as compensatory damages. Appellant averred that at the time of Mr. Field's death, Mr. Field owned all of the oil and gas interest underlying the Property. Appellant claimed that after Mr. Field's death, the interest passed equally in 1/6 shares to the Field Heirs. Appellant's claims to the oil and gas on the Property are based on a series of non-warranty mineral deeds acquired from the Field Heirs beginning in 2017.

Appellees each filed preliminary objections to Appellant's amended complaint. On July 7, 2020, the trial court entered an order overruling in part and sustaining in part the preliminary objections. Specifically, the court

_____

[3] VEA and VEA II merged with and into Rice. For purposes of disposition, we refer to VEA and VEA II collectively as Rice.

sustained Appellees' preliminary objections which had moved to strike Appellant's claims for injunctive relief, for punitive damages, and for a jury trial. The court overruled all remaining preliminary objections.

On October 4, 2021, EQT and Rice filed a joint motion for judgment on the pleadings and moved to dismiss the amended complaint. In their motion, EQT and Rice alleged that Appellant's declaratory judgment action was barred by the statute of limitations, that Appellant's quiet title and declaratory judgment actions were barred because equitable reformation of a deed is unavailable as a remedy, and Appellant's actions for trespass, conversion, and ejectment should be dismissed as derivative of Appellant's declaratory judgment and quiet title actions. (Motion for Judgment on the Pleadings, filed 10/4/21, at 7-9). No other defendant joined the motion or filed a separate motion for judgment on the pleadings.

On January 6, 2022, Appellant filed a motion for leave to file a second amended complaint to join the Field Heirs, who Appellant asserted held an interest in the oil and gas underlying the Property, and to include additional averments related to EQT's allegedly inconsistent deed interpretation.

On June 22, 2022, the court entered its order on the motion for judgment on the pleadings, stating:

> 1. The [c]ourt finds as a matter of law, the pleadings closed [in] September 2020.
>
> 2. [EQT and Rice's] Motion for Judgment on the Pleadings that [Appellant's] declaratory judgment is barred by the statute of limitations is granted. [Appellant's] Declaratory

- 5 -

Judgment action is dismissed with prejudice.

3. [EQT and Rice's] Motion for Judgment on the Pleadings that [Appellant's] Quiet Title Action Be Dismissed is granted. [Appellant's] quiet title action is dismissed **without prejudice**.

4. [EQT and Rice's] Motion for Judgment on the Pleadings Regarding [Appellant's] Claim for Conversion, Trespass and Ejectment is granted. [Appellant's] claims for conversion, trespass and ejectment are dismissed **without prejudice**.

5. [Appellant's] Motion for Leave to File Second Amended Complaint is denied **without prejudice**.

(Trial Court Order, filed 6/22/22) (emphasis added).

On July 5, 2022, Appellant filed a motion to certify the court's order for immediate appeal, which was denied by operation of law. Appellant filed a notice of appeal on July 20, 2022, and later filed a petition for permission to appeal in this Court on September 2, 2022.

On appeal, this Court initially observed that the trial court's June 22, 2022 order did not dispose of all claims and of all parties, and that the court had not entered an express determination of finality. *See Cavallo Min. Partners, LLC v. EQT Prod. Co.*, 298 A.3d 413, 420 (Pa.Super. 2023). "In entering [judgment on the pleadings] against Appellant as to its quiet title action, the trial court explained…[that] Appellant must seek reformation of the deed and this cannot be accomplished by a quiet title action alone. The [c]ourt…therefore dismiss[ed] the quiet title action **without prejudice**." *Id.* (quoting Trial Court Opinion, 6/22/22, at 10) (emphasis in original). "As the remaining actions were predicated on the quiet title action, the trial court

- 6 -

entered [judgment on the pleadings] **without prejudice** as to those causes of action as well." **Id.** (emphasis in original). Further, "only [Rice] and EQT filed a motion for [judgment on the pleadings]. The remaining defendants did not join the motion." **Id.** Under these circumstances, this Court held that the trial court's June 22, 2022 order, which failed to dispose of all claims and of all parties, was not a final order under Pa.R.A.P. 341(c). **See id.**

This Court next turned to whether a permissive interlocutory appeal was appropriate under 42 Pa.C.S.A. § 702(b) (allowing appeal where trial court opines that its interlocutory order involves controlling question of law as to which there is substantial ground for difference of opinion and that immediate appeal from order may materially advance ultimate termination of matter; appellate court may thereupon, in its discretion, permit appeal to be taken from such interlocutory order). This Court noted that Pa.R.A.P. 1311 explains that an appeal may be taken by permission from an interlocutory order for which the trial court has denied certification under Section 702(b).

In analyzing whether Appellant could demonstrate why permission for appeal should have been granted,[4] this Court noted that Appellant relied on **County of Allegheny v. County of Allegheny**, 719 A.2d 1 (Pa.Cmwlth.

_____

[4] **See** Pa.R.A.P. 1312 (providing that petition must show (1) why order involved controlling question of law as to which there is substantial ground for difference of opinion; (2) that appeal from order may materially advance ultimate termination of matter; and (3) why refusal of certification was abuse of trial court's discretion that is so egregious to justify prerogative appellate correction").

1998), which Appellant claimed stood for the proposition of law that "the presence of the exception and reservation provision signified the grantor's intent that the oil, gas and minerals would not pass to the grantee." *Cavallo, supra* at 421. Appellant described the substantive issue presented to the trial court as "whether the language of the 1990 Deed conveyed oil and gas interests to EQT and [Rice], or whether interests remained vested in Field." *Id.* This Court explained that Appellant argued that "Grantees" as written in the 1990 Deed was "obviously" a scrivener's typographical error because it was "incompatible with the controlling 'excepting and reserving' language" earlier in the deed. *Id.* at 423.

This Court further noted that in response, Rice and EQT argued that Appellant had taken the position that the 1990 Deed contained a scrivener's error; and that to rectify a scrivener's error, the writing must be reformed based on a showing of evidence of the parties' intent. Nevertheless, Rice and EQT claimed that Appellant failed to amend its action to seek reformation of the 1990 Deed, in accordance with the June 22, 2022 order, which had dismissed some of Appellant's claims without prejudice. *Id.* at 422.

This Court determined that Appellant's reliance on *Allegheny* dealt with conveying interests to a nonparty, which was distinguishable from the facts of this case. *See Cavallo, supra* at 422-23. Thus, "[t]he proposed controlled question of law [could not] be resolved simply by adherence to *Allegheny*." *Id.* at 423. This Court further explained that "[w]hile Appellant claims

- 8 -

immediate appeal is necessary to resolve this controlling question of law, it ignores the fact that relief remains available to Appellant, *i.e.*, interpretation of the 1990 Deed in light of the alleged scrivener's error." ***Id.*** Thus, this Court decided that it could not determine, at that juncture, whether the trial court would deem the 1990 Deed's disputed provision a "scrivener's error" justifying reformation of the deed. As such, the appeal was premature, particularly where the court expressly entered judgment on the pleadings **without prejudice** such that the court did not foreclose the grant of relief to Appellant. For all of these reasons, this Court quashed the appeal as interlocutory and denied permission to appeal. ***See id.***

On September 26, 2023, Appellant filed a motion for reconsideration of the court's June 22, 2022 order, requesting that the court reverse its decision as to Appellant's claims for quiet title, trespass, conversion, and ejectment.[5] Appellant's motion was again based on its assertion that the excepting and reserving clause in the 1990 Deed did not convey the oil and gas interest to the grantee, the McChesneys. Appellant claimed that contrary to the trial court's assertion in the June 22, 2022 order, no reformation of the 1990 Deed was required because Appellant maintained that the 1990 Deed retained the

---

[5] Appellant explained that although motions for reconsideration of final orders must be filed within 30 days of the entry of the order, no such requirement applies to orders that are not final. Therefore, recognizing that this Court's opinion in **Cavallo, supra** deemed the June 22, 2022 order not final, Appellant argued that its motion for reconsideration was appropriate.

oil and gas rights for the grantor, Mr. Field.

On November 22, 2023, the trial court denied Appellant's request for reconsideration. In that order, the court provided:

> [Appellant] is further instructed to file an Amended Complaint including a count for Deed Reformation within twenty (20) days of the date of this Order. In the event [Appellant] does not file an Amended Complaint within twenty (20) days of this order, [Appellant] will be forever barred from asserting any future claims arising from the 1990 Deed and the June 2022 Order **shall be amended to dismiss all claims as to all Defendants with prejudice**.

(Trial Court Order, 11/22/23) (emphasis added).

Appellant did not file an amended complaint within 20 days. Consequently, on December 18, 2023, Appellant filed a *praecipe* for the entry of final judgment. The prothonotary entered judgment that day. Appellant appealed on December 21, 2023.[6] Pursuant to the court's order, Appellant filed its concise statement of errors complained of on appeal on January 11, 2024.

Appellant raises the following issues for our review:

> 1. Did a four-year statute of limitation bar [Appellant's] Declaratory Judgment claim, despite [Appellant] filing its claim within four years of acquiring the property interest and where the Declaratory Judgment was aimed to facts for [Appellant's] Quiet Title claim which had no statute of

---

[6] Appellant filed three notices of appeal: (1) at docket No. 1515 WDA 2023, purporting to appeal from the November 22, 2023 order denying Appellant's motion for reconsideration; (2) at docket No. 1516 WDA 2023, from the December 18, 2023 judgment; and (3) at docket No. 1517 WDA 2023, from the June 22, 2022 order granting partial judgment on the pleadings. We discuss the propriety of these appeals *infra*.

limitation.

2. Since Mr. Field owned the Subject Property's Oil and Gas Estate prior to executing the 1990 Deed, and since the Oil and Gas Exception in the 1990 Deed excepted the Oil and Gas Estate, did [Appellant], as a successor to Mr. Field's interest, plead a legally sufficient claim to ownership of the Oil and Gas Estate to avoid dismissal of its Quiet Title, Ejectment, Trespass and Conversion claims at judgment on the pleadings?

3. Since the 1990 Deed excepted Oil and Gas Estate, which means, by definition, that the oil and gas was retained by Mr. Field, did [Appellant] have to reform the word "Grantees" in the Oil and Gas Exception in order for Mr. Field to retain the Oil and Gas Estate?

4. Accepting all facts in the 1990 Deed and reasonable inferences therefrom as true and in the light most favorable to [Appellant], did principles of deed interpretation dictate the parties' intent that the Oil and Gas Estate remain with Mr. Field, where:

   a. the instrument contained the Oil and Gas Exception, using the phrase "EXCEPTING AND RESERVING," was textually linked to preceding clauses which excepted and reserved coal interests, contained a statement that the surface could be disturbed;

   b. the parties used words to grant and convey which were not replicated in the Oil and Gas Exception; and

   c. where the parties separately used the pronoun "their" to modify "Grantees" which is different than in the Oil and Gas Exception?

5. Did the Trial Court have jurisdiction in the absence of heirs of Mr. Field who were believed to own interests in the Oil and Gas Estate with [Appellant]?

6. Did the Amended Complaint contain sufficient averments to seek relief for punitive damages in the context of oil and gas development undertaken in bad faith?

- 11 -

(Appellant's Brief at 16-19) (questions reordered for purposes of disposition).

Preliminarily, we must address Appellant's filing of three notices of appeal.

> "[T]he appealability of an order directly implicates the jurisdiction of the court asked to review the order." **Knopick v. Boyle**, 189 A.3d 432, 436 (Pa.Super. 2018) (internal citation omitted). As a general rule, appellate courts have jurisdiction only over appeals taken from a final order. **In re Bridgeport Fire Litigation**, 51 A.3d 224, 229 (Pa.Super. 2012). A final order is one that disposes of all the parties and all the claims; or is entered as a final order pursuant to the trial court's determination under Rule 341(c). Pa.R.A.P. 341(b)(1), (3). An appeal may also be taken from "an order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8).

**Schmitt v. State Farm Mut. Auto. Ins. Co.**, 245 A.3d 678, 681 (Pa.Super. 2021). This Court has held that orders that resolve declaratory judgment claims, but leave other claims outstanding, are not final and appealable where the order did not resolve all claims. **Id.** at 682-83 (citing cases).

Here, at docket No. 1517 WDA 2023, Appellant purports to appeal from the June 22, 2022 order, which granted EQT and Rice's motion for judgment on the pleadings in part, and granted leave to file a second amended complaint. As this Court had previously made clear, however, the June 2022 order did not dispose of all claims and is not a final order. **See Cavallo, supra**. Accordingly, we quash the appeal at docket No. 1517 WDA 2023. Appellant also purports to appeal at docket No. 1515 WDA 2023, from the November 22, 2023 order denying Appellant's motion for reconsideration.

- 12 -

Nevertheless, "[d]enial of reconsideration is not subject to appellate review." ***Erie Ins. Exch. v. Larrimore***, 987 A.2d 732, 743 (Pa.Super. 2009). Thus, we must quash the appeal at this docket number as well. Accordingly, we will address only the appeal at docket No. 1516 WDA 2023, which is from the final judgment entered in this case on December 18, 2023.

In the first issue for our consideration, Appellant argues that the trial court erred in finding that the statute of limitations barred Appellant's declaratory judgment action. Appellant first contends that even if a four-year statute of limitations applies, its cause of action would not be barred. Appellant claims it acquired its oil and gas interest in the Property in 2017; therefore, Appellant insists the cause of action for a declaratory judgment accrued in 2017. Appellant submits that when it initiated the proceedings in February 2018, it did so within the statute of limitations. Second, Appellant asserts that the four-year statute of limitations should not apply because Appellant was not seeking a declaratory judgment about its rights and duties under a contract. Instead, Appellant insists that its declaratory judgment claim was aimed at establishing facts for its quiet title claim, which has no statute of limitations. Appellant cites to decisions of the federal courts, arguing that the statute of limitations for a declaratory judgment action is the same as the period of limitations applicable to the substantive claims underlying the action. Appellant concludes that the trial court erred when it dismissed the declaratory judgment action as barred by the statute of

limitations, and this Court must grant relief. We disagree.

Our standard of review of a trial court's entry of judgment on the pleadings is well settled.

> Entry of judgment on the pleadings is appropriate "when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." ***Consolidation Coal Co. v. White***, 875 A.2d 318, 325 (Pa.Super. 2005). Our scope of review is plenary and we will reverse only if the trial court committed a clear error of law or if the pleadings disclose facts that should be submitted to a trier of fact. ***Id.*** "We accept as true all well-pleaded allegations in the complaint." ***Id.***

***Sisson v. Stanley***, 109 A.3d 265, 274 (Pa.Super. 2015). "On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury." ***Rubin v. CBS Broadcasting Inc.***, 170 A.3d 560, 564 (Pa.Super. 2017). As the question of whether a cause of action is barred by the statute of limitations is a question of law, entry of judgment on the pleadings may be appropriate where a defendant successfully pleads a statute of limitations defense. ***Booher v. Olczak***, 797 A.2d 342, 346 (Pa.Super. 2002).

This Court has held that a declaratory judgment action is subject to a four-year statute of limitations. ***Wagner v. Apollo Gas Co.***, 582 A.2d 364, 366 (Pa.Super. 1990). In ***Wagner***, the plaintiff asserted a declaratory judgment claim seeking damages for breach of contract. This Court held that the pertinent statute of limitations for a breach of contract claim barred

recovery of damages; however, this Court explained that a litigant may pursue a declaratory judgment whether or not further relief is or could be claimed. Thus, the **Wagner** Court then turned to whether the declaratory judgment claim itself was also time barred. This Court stated:

> Our research fails to reveal the prescription of a specific statute of limitations with regard to declaratory judgment actions. More importantly, we find the aforementioned statute of limitations inapplicable. To start the running of the statute of limitations in a declaratory judgment action from the time of a contract breach when such a cause of action may arise regardless of the existence of a breach is both inconsistent and illogical. Since we find no specific articles of Section 5525 applicable, we find the four year "catch all" statute of limitations appropriate in this instance. 42 Pa.C.S.A. § 5525(8).

*Id.* at 366. **See also Selective Way Ins. Co. v. Hospitality Group Services, Inc.**, 119 A.3d 1035 (Pa.Super. 2015) (*en banc*) (explaining that four-year catchall statutory limitations is appropriate for declaratory judgment actions); **Green v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n**, 158 A.3d 653, 660 (Pa.Super. 2017), *appeal denied*, 643 Pa. 695, 174 A.3d 571 (2017) (stating "declaratory judgment actions are subject to a four-year limitations period under Pennsylvania law").

The "statute of limitations for a cause of action begins to run 'from the time the cause of action accrued.'" **Selective Way Ins. Co., supra** at 1047 (quoting 42 Pa.C.S.A. § 5502(a)). "A cause of action for a declaratory judgment accrues when an actual controversy exists between the parties." **Id.** at 1048.

- 15 -

Instantly, the trial court acknowledged that the federal cases upon which Appellant relied were well reasoned; however, it recognized that based on the binding Pennsylvania precedent set forth above, the declaratory judgment action was subject to a four-year limitations period. With respect to when the four-year statute of limitations period began to run, the trial court explained:

> Addressing the second related question of when the cause of action accrued, it seems undisputed that would have been in 2003 when [Appellees] recorded their oil and gas lease claiming the oil and gas deposits. At that point, [Appellees] were claiming the property of [Appellant's] predecessors. The granting of the lease was clearly antagonistic to the Field [H]eirs' claims and indicated imminent and inevitable litigation. Applying a four-year statute to the 2003 date results in a finding [Appellant's] declaratory judgment action is time-barred and the claim will be dismissed with prejudice.

(Trial Court Opinion, 6/22/22, at 8).

We agree with the trial court that Appellant's declaratory judgment action was subject to a four-year limitations period. *See Selective Way Ins. Co., supra*; *Green, supra*; *Wagner, supra*. We are aware of the federal cases cited by Appellant that hold differently, but as the trial court properly recognized, decisions of federal courts are not binding on this Court. *See Werner v. Plater–Zyberk*, 799 A.2d 776, 782 (Pa.Super. 2002), *appeal denied*, 569 Pa. 722, 806 A.2d 862 (2002). Thus, Appellant was required to initiate this action within four years from the time when the cause of action accrued.

In its amended complaint, Appellant requested the court to declare that

the McChesneys did not own interest in the oil and gas underlying the Property at the time of the **2003 Lease**, and that the McChesneys did not own interest in the oil and gas underlying the Property at the time of the **2013 Lease**. As such, it is clear from the amended complaint that the cause of action underlying the declaratory judgment accrued with the 2003 Lease, when the McChesneys first leased the oil and gas rights to T&F and assigned royalty payments to Three Rivers. At this point, Appellant's predecessors-in-interest, the Field Heirs, had notice via a recorded deed that the McChesneys were exercising their right to the oil and gas estate on the Property, and the four-year statute of limitations began. Because Appellant did not initiate the declaratory judgment action until 2018, we agree with the trial court that such action was barred by the four-year statute of limitations, and the trial court properly granted Appellees' motion for judgment on the pleadings on this ground. *See Selective Way Ins. Co., supra*.

In its next three issues, Appellant claims that the trial court erred when it granted EQT and Rice's motion for judgment on the pleadings and dismissed Appellant's claims for quiet title, trespass, conversion, and ejectment. Appellant insists that the 1990 Deed excepted the oil and gas interests from its conveyance to the McChesneys. Appellant argues that based on the plain language of the 1990 Deed, the oil and gas rights were "excepted and reserved" from the property interest that was being conveyed and therefore the oil and gas interests were not included in the conveyance to the

McChesneys and were retained by Mr. Field.

Appellant further argues that the trial court fundamentally misapprehended the function of a deed exception. Appellant maintains that the fact that an interest is listed in a deed as an exception means that it is separated from the remainder of the property interest conveyed and remains with the grantor, despite any language in the exception purportedly setting forth a different object for the exception. On this basis, Appellant submits that the oil and gas interest passed to the Field Heirs upon Mr. Field's death, and that Appellant had acquired interest in the oil and gas rights from the Field Heirs. Appellant cites various cases wherein courts have affirmed the proposition that interests excepted from a conveyance remained with the grantor. (*See* Appellant's Brief at 45) (collecting cases). Appellant avers that an exception may not be made in favor of another party and, by the nature of being an exception, the thing subject to an exception must remain with the grantor. Based on this reasoning, Appellant contends that it did not have to reform the 1990 Deed because reading the deed to except the oil and gas in favor of the grantees would be an absurd result.

Finally, Appellant submits that principles of deed interpretation dictate that the parties intended for the oil and gas estate to remain with Mr. Field. Appellant highlights that the deed uses the terms of "**his** heirs and assigns" in the paragraph discussing an exception to the McChesneys, which could not have been meant for the McChesneys, who the deed earlier referred to as

"their." Appellant also argues that it would be superfluous to include an exception and reserving clause in favor of a grantee where the lease would otherwise convey the interest to the grantee. Appellant concludes the trial court erred by failing to interpret the deed as excepting and reserving the oil and gas interest for Mr. Field. We disagree.

"The purpose of a quiet title action is to settle competing claims to interests in property or to determine right or title or the validity of any deed affecting any interest in land." **Stoley v. Wampler**, 317 A.3d 1007, 1015-16 (Pa.Super. 2024) (quoting **Cornwall Mountain Investments, L.P. v. Thomas E. Proctor Heirs Tr.**, 158 A.3d 148, 160 (Pa.Super. 2017), *appeal denied*, 643 Pa. 122, 172 A.3d 594 (2017)). "It is well-settled that the plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title." **Woodhouse Hunting Club, Inc. v. Hoyt**, 183 A.3d 453, 458 (Pa.Super. 2018) (citation omitted). Furthermore, "reformation of a deed is an equitable remedy that is not available in an action at law filed pursuant to Rule 1061 to quiet title." **Stoley, supra** at 1016.[7]

---

[7] Pennsylvania Rule of Civil Procedure 1061 governs quiet title actions and provides that such actions may be brought:

> (1) to compel an adverse party to commence an action of ejectment;
>
> (2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the

*(Footnote Continued Next Page)*

In addition, "to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in the possession of another without a privilege to do so." ***Kennedy v. Consol Energy Inc.***, 116 A.3d 626, 636 (Pa.Super. 2015), *appeal denied*, 634 Pa. 749, 130 A.3d 1291 (2015). This Court has held that actions taken pursuant to a deed may be privileged, and therefore would not constitute a trespass. ***Id.*** Significantly, "to maintain an action for trespass to land, a plaintiff must have been in possession, either actual or constructive" or have "any estate in the minerals upon which to predicate a right to possession." ***Potts Run Coal Co. v. Benjamin Coal Co.***, 426 A.2d 1175, 1178 (Pa.Super. 1981) (citation omitted).

> The classic definition of conversion under Pennsylvania law is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." ***McKeeman v. Corestates Bank, N.A.***, [751 A.2d 655, 659 n.3 (Pa.Super. 2000)]. Although the exercise of control over the chattel must be intentional, the tort of conversion does not rest on proof of specific intent to commit a wrong. ***Id.***

---

validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;

(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; or

(4) to obtain possession of land sold at a judicial or tax sale.

Pa.R.C.P. 1061(b).

*Kennedy, supra* at 637. "A plaintiff must have either actual or constructive possession, or the right to immediate possession at the time of the conversion." *Potts Run Coal Co., supra* at 1178 (holding that plaintiff had neither possessory interest nor ownership interest, but only possibility of obtaining interest, accordingly, plaintiff "has only a contingent right in the nature of a possibility" and "until that contingency is cleared and [plaintiff's] right to possession perfected and made immediate, it cannot maintain" its actions for trespass and conversion).

"Ejectment is a possessory action only, and can succeed only if the plaintiff is out of possession, and he has a present right to immediate possession." *Siskos v. Britz*, 567 Pa. 689, 698, 790 A.2d 1000, 1006 (2002) (internal citation omitted). "A court only has jurisdiction over an [a]ction in [e]jectment if the defendant possesses the land and the plaintiff has the right to possess." *Id.* "The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular litigation." *Id.* at 699, 790 A.2d at 1006.

Instantly, Appellant's claimed interest and right to immediate possession comes from its reading of the 1990 Deed. "[T]he object in interpreting instruments relating to oil and gas interests, like any written instrument, is to ascertain and effectuate the intention of the parties." *Szymanowski v. Brace*, 987 A.2d 717, 720 (Pa.Super. 2009), *appeal denied*,

606 Pa. 688, 997 A.2d 1179 (2010) (citation and quotation omitted). In interpreting a contract, "[t]he intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." ***Thomas Rigging & Const. Co. v. Contraves, Inc.***, 798 A.2d 753, 755 (Pa.Super. 2002), *appeal denied*, 575 Pa. 688, 834 A.2d 1143 (2003) (citation omitted). "[W]hen the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document," and "this Court need only examine the writing itself to give effect to the parties' understanding. [We] must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." ***Stephan v. Waldron Elec. Heating & Cooling LLC***, 100 A.3d 660, 665 (Pa.Super. 2014) (citation omitted).

Under Pennsylvania law, the ownership of oil and gas rights is similar to that of coal and mineral rights, where either may be severed from ownership of the surface estate by grant or exception. However, Pennsylvania has long followed the ***Dunham***[8] Rule of property, a rebuttable presumption that "if, in connection with a conveyance of land, there is a reservation or an exception of 'minerals' without any specific mention of natural gas or oil, ... the word 'minerals' was not intended by the parties to include natural gas or oil." ***Butler v. Charles Powers Est. ex rel. Warren***, 620 Pa. 1, 22, 65 A.3d 885,

---

[8] ***Dunham v. Kirkpatrick***, 101 Pa. 36 (1882).

898 (2013) (quoting **Highland v. Commonwealth**, 400 Pa. 261, 276-277,

161 A.2d 390, 398-399 (1960)).

Here, the parties debate proper interpretation of the 1990 Deed, which

includes the following clauses:

> EXCEPTING and reserving, all the Pittsburgh or River Vein of Coal, together with the necessary mining rights, in and underlying the aforesaid tract of land, as heretofore conveyed by Thomas J. Huffman.  It is further understood and agreed that the above tract ... is sold subject to the terms of the oil and gas leases now on the same, and is subject to all the conditions in said leases.
>
> **AND the Grantor, for himself, his heirs and assigns, EXCEPTS AND RESERVES all coal and other minerals** within and underlying the above-described tract of land (herein the "Property") not heretofore excepted and reserved, or otherwise transferred by instruments of record, together with the exclusive right to DEEP MINE and otherwise to develop and work and process for market the same, and other coal now owned or leased or hereinafter acquired by Grantor, his heirs or assigns (hereinafter called "Other Coal"), by any method or machinery now or hereafter employed, including the free and uninterrupted right and right-of-way into, across, under, and through the Property, but not upon or over the surface of the Property, except to test drill, survey and ventilate said mine, at such points and in such manner as may be convenient or necessary for the purpose of all operations in connection therewith, and in the horizons of said coal seams and in the strata above or below the same, and Other Coal, including, but not limited to, the transportation of personnel, supplies, and equipment, and the right to explore, test drill, dig, mine, drain, ventilate, transport, and carry away said coal and other minerals and other mineral and Other Coal and materials now owned or which may be hereafter acquired by Grantor, his heirs and assigns, and to erect and maintain within said deep mine such buildings, shafter, engines, machinery, appliances, devices, wells, roadways, railroad tracks, power lines, pipe lines, and all other structures and improvements necessary or convenient to said operations; provided, however, that

the right to support of the surface and all structures or improvements now or hereafter erected thereon, shall pass to the **Grantees, their heirs and assigns; and Grantees, for themselves, their heirs and assigns**, for the consideration aforesaid, do hereby (except as otherwise specifically provided) WAIVE AND RELEASE all other damage and damages of any sort howsoever caused arising from the removal of, and all operations in connection with said coal and other minerals and materials and Other Coal or the horizons thereof, by Grantor, his heirs or assigns, or arising from any physical conditions now present or which may hereafter develop in, about and/or above the same.

The rights, easements, licenses, waivers and privileges herein excepted and reserved are in enlargement of and not in restriction of the rights incidental to the ownership of coal and other minerals and the same shall not terminate by reason of the completion of mining in and on the within described coal and mineral property.

Grantor shall give written notice to Grantees before conducting mining operations upon the Property, which notice shall be delivered to Grantees, at least six (6) months prior to commencement of such mining operations.

**ALSO EXCEPTING AND RESERVING, for the benefit of Grantees, his heirs and assigns, all oil and gas not previously excepted, reserved or conveyed, together with the right to mine and operate for the same.**

(Amended Complaint at Exhibit 2, 1990 Deed, at 2-4) (emphasis added).

In ruling on the motion for judgment on the pleadings, the trial court explained its interpretation of the oil and gas exception and reservation as follows:

The [c]ourt notes that neither party claim there is an error in the deed. [Appellees] argue that for [Appellant] to prevail, [Appellant] must prove error and have the deed reformed but [Appellant] denies this. Further, neither side have suggested there is any need for parol or extrinsic evidence to understand the provision. [Appellees'] focus is

on the language in the provision that expresses the oil and gas is excepted/reserved for the benefit of the Grantees. [Appellant's] focus is on the use of the words excepting and reserving. Neither party considers the provision in its entirety…. The language is unusual, this [c]ourt has never seen the use of the terms reserving and excepting used in the context of benefitting the Grantee. However, case law does indicate a situation where a reservation/exception has been applied to someone other than the Grantor. In the case of [***Allegheny, supra***], the Commonwealth Court held that a conveyance where the Grantor attempts to except minerals, gas, and oil to an entity not a party to the deed, the exception was ineffective. But the Court did not find the language ambiguous….

The above exception language is nearly identical to that in the present case. The difference is that the McChesneys were a party to the 1990 [D]eed. Application of the above would indicate an intent by Grantor Des Moine Field to convey the gas and oil rights to the McChesneys….

(Trial Court Opinion, 6/22/22, at 9). The court continued:

In summary, based on the above, **the oil and gas rights passed to the McChesneys, unless there is an error on the face of the deed.** It thus appears [Appellees] are correct, **[Appellant] must seek reformation of the deed** and … this cannot be accomplished by a quiet title action alone. …

(***Id.*** at 10) (emphasis added). Finally, with respect to Appellant's remaining claims, the trial court explained that based on its rulings, "which dismissed both the declaratory judgment action and the quiet title claim, it does not appear [Appellant] has a case for trespass, conversion, or ejectment. **Without establishing a claim for reform of the deed**, [Appellant] does not have a claim for trespass, conversion or ejectment. …" (***Id.*** at 11) (emphasis added).

- 25 -

We agree with the trial court's analysis. As this Court explained in the earlier appeal in this case, Appellant's reliance on **Allegheny, supra** is not dispositive, as that case dealt with an exception/reservation clause for the benefit of a non-party. **See Cavallo, supra**. Appellant cites no binding authority to support the claim that the exception/reservation of oil and gas for the benefit of a party (the grantee) is ineffective.

Furthermore, we note that oil and gas rights are distinct from mineral rights. The fact that the language in the deed excepted and reserved mineral rights for the grantor without mentioning oil and gas in those provisions creates a rebuttable presumption that the parties did **not** intend to except and reserve the oil and gas for the grantor. **See Butler, supra**. As the trial court found, the later language in the deed excepting and reserving the oil and gas for the benefit of the grantees evidenced the parties' intent that the McChesneys, as grantees, were to receive the oil and gas rights to the property, unless there was an error on the face of the deed which would require reformation.

We recognize Appellant's argument that the deed uses the phrase "his heirs and assigns" in the provision purporting to except and reserve the oil and gas rights for the grantees rather than "their heirs and assigns" as used in earlier provisions referring to the grantees. Indeed, a review of the 1990 Deed in its entirety reveals no other instance where grantees were referred to as "his" rather than "their." To accept Appellant's argument that the parties

intended for the oil and gas rights to be excepted and reserved for the grantor, would mean that the use of the word "grantees" in that provision was a scrivener's error. The trial court recognized this possibility and gave Appellant a chance to amend the complaint and seek reformation of the deed by showing evidence of the parties' intent. (*See* Trial Court Opinion, 6/22/22, at 10). Following Appellant's interlocutory appeal to this Court,[9] the trial court again gave Appellant an opportunity to file an amended complaint seeking reformation of the 1990 Deed. However, Appellant chose not to file an amended complaint asserting a claim for deed reformation.

Thus, even if Appellant is correct that there is an error in the deed, the deed would still need to be reformed to change the word "Grantees" to

_____

[9] We reiterate that this Court stated in the earlier appeal that Appellant still had a chance to seek reformation of the deed. This Court explained:

> We recognize "mistake of a scrivener in preparing a deed ... may be established by parol evidence and the instrument reformed accordingly." *In re Mihordin*, 162 A.3d 1166, 1172 (Pa.Super. 2017) (citation omitted). Whether the mistake be unilateral or bilateral, "the proof of the mistake must be established by evidence that is clear, precise, convincing, and of the most satisfactory character." *Id.* Such determination must be made by the trial court. Based on the record before us, it cannot be made as a matter of law at this stage of the proceedings.
>
> While Appellant claims immediate appeal is necessary to resolve this controlling question of law, it ignores the fact that relief remains available to Appellant, *i.e.*, interpretation of the 1990 Deed in light of the alleged scrivener's error.

*Cavallo, supra* at 423.

"Grantor" in the paragraph excepting and reserving the oil and gas rights. As the trial court and this Court in the prior appeal has made clear, however, reformation of a deed is not available in an action to quiet title. **See Stoley, supra**.

Ultimately, Appellant failed to adhere to the trial court's directive to assert a claim for deed reformation and is now barred from that opportunity.[10] Accordingly, Appellant's pleadings are based on a deed which reserved and excepted oil and gas rights in favor of the Grantees, rather than Appellant's successor in interest, the Grantor, and Appellant cannot succeed on its quiet title claim in the absence of having the deed reformed. **See Woodhouse Hunting Club, Inc.** We further agree with the trial court that, without a successful quiet title claim, Appellant is not able to establish either possession or the right to immediate possession to succeed on its derivative claims of trespass, conversion and ejectment. **See Potts Run Coal Co., supra**; **Siskos, supra**. On this record we cannot say that the trial court erred in granting judgment on the pleadings in Appellees' favor on Appellant's claims for quiet title, trespass, conversion, and ejectment.

In its next issue, Appellant argues that the trial court lacked subject

---

[10] We reiterate that following this Court's quashal of Appellant's interlocutory appeal, the trial court made clear that if Appellant failed to amend the complaint and seek reformation, it would be "forever barred from asserting any future claims arising from the 1990 Deed…" (Trial Court Order, 11/22/23).

matter jurisdiction over the action because not all individuals with ownership claims to the oil and gas estate were parties to the case. Appellant claims that the trial court erred when the court denied its motion to amend the complaint to join the other Field Heirs from whom Appellant did not acquire interests and whom Appellant believes own some oil and gas interests in the Property. Appellant insists that the Field Heirs were indispensable parties, who had a direct interest in the court's determination of the parties' rights under the 1990 Deed. We disagree.

Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction. *Sabella v. Appalachian Dev. Corp.*, 103 A.3d 83, 90 (Pa.Super. 2014), *appeal denied*, 631 Pa. 744, 114 A.3d 417 (2015). This Court has explained:

> "[A] party is indispensable 'when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights.'" *City of Phila. v. Commonwealth*, 575 Pa. 542, 838 A.2d 566, 581 (2003), quoting *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184, 189 (1988). "If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." *Grimme Combustion, Inc. v. Mergentime Corp.*, [595 A.2d 77, 81 (Pa.Super. 1991)], citing *Sprague, supra*. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation.
>
> 1. Do absent parties have a right or an interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of

the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Martin v. Rite Aid of Pa., Inc.*, 80 A.3d 813, 814 (Pa.Super. 2013); *accord Mechanicsburg Area Sch. Dist. v. Kline*, 494 Pa. 476, 431 A.2d 953, 956 (1981).

"In determining whether a party is indispensable, the basic inquiry remains 'whether justice can be done in the absence of a third party.'" *Pa. State Educ. Ass'n v. Commonwealth*, 616 Pa. 491, 50 A.3d 1263, 1277 (2012), quoting *CRY, Inc. v. Mill Serv., Inc.*, 536 Pa. 462, 640 A.2d 372, 375 (1994).

This Court has held that in a quiet title action, all parties who claimed title to the property at issue must be joined as indispensable parties. *Hartzfeld v. Green Glen Corp.*, [552 A.2d 306, 310 (Pa.Super. 1989)].

*Orman v. Mortg. I.T.*, 118 A.3d 403, 406-07 (Pa.Super. 2015).

Instantly, the trial court explained:

As to joinder of the Field [H]eirs, it is difficult to understand the necessity. Even assuming the Field [H]eirs have an interest in the property, they do not appear to be indispensable parties. [*See Grimme, supra* (holding that if no redress is sought against party and party's rights would not be prejudiced by decision in case, it is not indispensable; further explaining party was not indispensable where justice could be afforded without violating party's due process rights)]. Locating the remaining heirs could be time consuming and would protract an already slow-moving case, without any benefit to the parties.

(Trial Court Opinion, 6/22/22, at 12).

We agree with the trial court's rationale. Even if the remaining Field

Heirs had an interest in the Property, they did not claim title to the interest.

Nor would Appellant's claims, which were only based on the portion of the

- 30 -

estate that Appellant purported to have purchased, affect the rights of the Field Heirs who had not sold their purported interest to Appellant. **See Orman, supra**. Therefore, this issue merits no relief.

In its final issue, Appellant argues that the trial court erred when it sustained EQT and Rice's preliminary objections and struck Appellant's request for punitive damages concerning its trespass and conversion claims. Appellants claims that punitive damages should have been available because EQT and Rice were bad faith trespassers from whom Appellant is entitled to punitive damages. We disagree.

Punitive damages are not a separate cause of action, rather they are incidental to the underlying cause of action. **Reading Radio, Inc. v. Fink**, 833 A.2d 199, 214 (Pa.Super. 2003) (stating: "If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is only an element of damages"). To recover punitive damages, plaintiffs must plead additional facts establishing that the defendant's "conduct was malicious, willful, oppressive, or exhibited reckless indifference to the rights of others." **Hart v. O'Malley**, 781 A.2d 1211, 1217 (Pa.Super. 2001). "Punitive damages are awarded to punish a defendant for certain outrageous acts and to deter [it] or others from engaging in similar conduct." **Angelopoulos v. Lazarus PA Inc.**, 884 A.2d 255, 262 (Pa.Super. 2005), *appeal denied*, 587 Pa. 680, 897 A.2d 449 (2006) (citation omitted).

> It is well settled that punitive damages will lie only in cases of outrageous behavior, where defendant's egregious

conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct.

***Slappo v. J's Dev. Assocs., Inc.***, 791 A.2d 409, 417 (Pa.Super. 2002) (citation omitted). Furthermore, this Court has explained that

> the general framework for the computation of damages arising from a trespass distinguishes between innocent or good-faith trespasses and trespasses committed in bad faith. Stated broadly, when improvements to land are made by a good-faith trespasser, the injured party is entitled, in effect, to the trespasser's net profits, *i.e.*, the revenues generated upon the land less the moneys expended in facilitating the profitable activity. However, when a party trespasses in bad faith, the injured party is entitled to all moneys derived from the trespass without any offset for the cost of generating those moneys.

***Sabella, supra*** at 98.

Instantly, in its amended complaint, Appellant sought punitive damages in association with its cause of action for trespass against EQT, and in its cause of action for trespass against Rice, alleging that EQT and Rice's actions in drilling and producing oil and gas were made in bad faith. (**See** Amended Complaint, 4/18/18, at ¶¶ 200, 205) (alleging that EQT's actions "were made in bad faith, as there is no doubt that the 1990 Deed contains an explicit 'exception and reservation' of oil and gas, such that no credible reading of the 1990 Deed could conclude that the instrument transferred the oil and gas" to the McChesneys); (**Id.** at ¶¶ 222, 225) (averring that Rice's actions "were made in bad faith, as the 1990 Deed, … contains an explicit exception and

reservation of oil and gas and there is no credible reading of the 1990 Deed whereby the oil and gas underlying the Subject Property was conveyed to" the McChesneys). In addition, Appellant sought punitive damages from both Rice and EQT in association with its claim of conversion, arguing that Rice and EQT's conduct "constitutes a conversion of [Appellant's] ownership interest in the oil and gas that is produced, severed, removed and sold from the Subject Property and was undertaken in bad faith." (*Id.* at ¶ 234).

Based on our conclusion that Appellant cannot succeed on its underlying claims, we conclude that the trial court did not err when it struck Appellant's claims for punitive damages. *See Reading Radio, Inc., supra*.[11] Accordingly, we affirm the judgment at docket No. 1516 WDA 2023, and quash the appeals at docket Nos. 1515 WDA 2023 and 1517 WDA 2023.

Appeal quashed at 1515 WDA 2023 and 1517 WDA 2023. Judgment affirmed at 1516 WDA 2023.

---

[11] Furthermore, we note that Appellant's claim that Appellees acted in bad faith, even if true, would not necessarily entitle Appellant to punitive damages, but rather could entitle Appellant to greater compensatory damages. *See Sabella, supra*.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  3/13/2025